# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| BETH A. DANIEL, On Behalf of Herself and All Others Similarly Situated, ) ) ) | Case No. |
| Plaintiff, ) ) ) | |
| v. ) ) | **CLASS ACTION COMPLAINT** |
| SNYDER'S-LANCE, INC., BRIAN J. ) DRISCOLL, JAMES W. JOHNSTON, JEFFREY ) A. ATKINS, PETER P. BRUBAKER, C. PETER ) CARLUCCI, JR., JOHN E. DENTON, ) LAWRENCE V. JACKSON, DAVID C. ) MORAN, DAN C. SWANDER, ISAIAH ) TIDWELL, and PATRICIA A. WAREHIME, ) ) | **JURY TRIAL DEMANDED** |
| Defendants, ) ) | |

Plaintiff Beth A. Daniel ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this class action on behalf of the public stockholders of Snyder's-Lance, Inc. ("Snyder's-Lance" or the "Company") against Snyder's-Lance and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Synder's-Lance will be acquired by Campbell Soup Company ("Campbell") through Campbell's wholly owned subsidiary Twist Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

1

2. On December 18, 2017, Snyder's-Lance and Campbell issued a joint press release announcing they had entered into an Agreement and Plan of Merger (the "Merger Agreement") to sell Snyder's-Lance to Campbell for $50.00 in cash per Snyder's-Lance common share (the "Merger Consideration"). The Proposed Transaction is valued at approximately $4.87 billion.

3. On January 17, 2018, Snyder's-Lance filed a Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Snyder's-Lance stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Synder's-Lance management's financial projections, relied upon by Snyder's-Lance's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs"), in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Goldman Sachs; (iii) the background process leading up to the Proposed Transaction; and (iv) Company insiders' potential conflicts of interest. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Snyder's-Lance stockholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction.

4. In short, unless remedied, Snyder's-Lance's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  Snyder's-Lance is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Snyder's-Lance common stock.

9.     Snyder's-Lance is a North Carolina corporation and maintains its principal executive offices at 13515 Ballantyne Corporate Place, Charlotte, North Carolina 28277. Snyder's-Lance manufactures and markets snack foods throughout the United States and internationally.  Snyder's-Lance's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "LNCE."

3

10. Defendant Brian J. Driscoll ("Driscoll") has been President and Chief Executive Officer ("CEO") of the Company since June 2017 after serving as interim President and CEO since April 2017. Defendant Driscoll has been a director of the Company since February 2016.

11. Defendant James W. Johnston ("Johnston") has been Chairman of the Board since May 2016 and a director of the Company since 2008.

12. Defendant Jeffrey A. Atkins ("Atkins") has been a director of the Company since 2006.

13. Defendant Peter P. Brubaker ("Brubaker") has been a director of the Company since 2010.

14. Defendant C. Peter Carlucci, Jr. ("Carlucci") has been a director of the Company since 2010.

15. Defendant John E. Denton ("Denton") has been a director of the Company since 2010.

16. Defendant Lawrence V. Jackson ("Jackson") has been a director of the Company since 2015.

17. Defendant David C. Moran ("Moran") has been a director of the Company since 2015.

18. Defendant Dan C. Swander ("Swander") has been a director of the Company since 2004.

19. Defendant Isaiah Tidwell ("Tidwell") has been a director of the Company since 1995.

20. Defendant Patricia A. Warehime ("Warehime") has been a director of the Company since 2010.

4

21.     The defendants identified in paragraphs 10 through 20 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

22.     Campbell is a New Jersey corporation, with its principal executive offices located at One Campbell Place, Camden, New Jersey 08103. Campbell makes a range of soups and simple meals, beverages, snacks and packaged fresh foods. Campbell's common stock is traded on the New York Stock Exchange under the ticker symbol "CPB."

23.     Merger Sub is a North Carolina corporation and an indirect wholly owned subsidiary of Campbell.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Snyder's-Lance common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

25.     This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of January 10, 2018, there were approximately 97,864,035 shares of Snyder's-Lance common stock outstanding. All members of the Class may be identified from records maintained by Snyder's-Lance or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class

5

actions.

26.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

      (a)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

      (b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

      (c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

27.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

28.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

29.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

30.     Snyder's-Lance is a branded snack food company with operations in North America and Europe.  The Company manufactures, distributes, markets and sells snack food products such as pretzels, sandwich crackers, kettle cooked chips, pretzel crackers, cookies, and

6

potato chips, among others. The products are packaged in various single-serve, multi-pack, family-size and party-size configurations. The Company's brands include Snyder's of Hanover®, Lance®, Cape Cod® kettle cooked chips and Kettle Brand® potato chips.

31. On September 1, 2016, Snyder's-Lance announced that its subsidiary, Kettle Foods, completed the acquisition of Metcalfe's Skinny Limited by acquiring the remaining 74% interest. Metcalfe's Skinny Limited is the United Kingdom's leading popcorn brand and also incorporates a range of corn and rice cake products. Former President and CEO of the Company Carl E. Lee, Jr. ("Lee") commented on the acquisition, stating:

> We are excited to add the Metcalfe's skinny brands to our portfolio and expand our presence in the UK marketplace. We see tremendous growth in the UK with additional opportunities for further international expansion for our innovative collection of snacking brands. This addition to our branded portfolio provides us with another better-for-you option in a growth snacking category in the European markets, and we look forward to supporting the continued success of the Metcalfe's skinny brands.

32. Following a Company review in the second and third quarters of 2017, on July 25, 2017, the Company initiated a Performance Transformation Plan which was intended to substantially streamline the Company's processes and structure, thereby cutting costs and complexity.

33. On August 8, 2017, in connection with the report of its financial results for the second quarter of 2017, Snyder's-Lance expanded on its Performance Transformation Plan and reported its 2020 financial outlook. In the press release, defendant Driscoll stated: "[w]hile we are encouraged by our branded sales momentum, we are not satisfied with our aggregate financial performance and have finalized a broad-based performance transformation plan to sharply expand margins and unlock substantial value for our shareholders." Defendant Driscoll was quoted as further stating:

7

Snyder's-Lance is well positioned with an attractive portfolio of brands and a strong track record of revenue growth. That said, we have not delivered on expectations for profitability and value creation. To address this shortfall, we have designed a comprehensive transformation program we believe will unlock operating profit improvement of approximately $175 million over the next 3+ years. As we announced two weeks ago, we have officially launched this effort, and we expect to achieve the full benefits of the plan in fiscal 2020.

With respect to Synder's-Lance's 2020 financial outlook, the press release highlighted:

**2020 Financial Outlook**

The Company believes that the execution of the strategic initiatives underlying the transformation plan will enhance the Company's margin profile and deliver long-term sustainable value to shareholders.

By 2020, the Company is targeting for operating margin to reach 14.0% and earnings per share, excluding special items, to grow at a four-year CAGR of 11-13%.

34.     On November 7, 2017, the Company reported its financial results for the third quarter of 2017. For the quarter, total net revenue from continuing operations was $563.2 million, a 3.7% increase compared to the third quarter of 2016. Adjusted EBITDA from continuing operations was $85.2 million, compared to $74.7 million in the third quarter of 2016.

Defendant Driscoll commented on the quarter's financial results, noting:

Our third quarter financial performance continued to improve along several dimensions. Gross margin performance was strong at 37.1% of net revenue compared to 36.8% in 2016. Selling, general and administrative performance also improved to 26.3% of net revenue compared to 28.0% last year. On top of these improving profitability trends, our branded net revenue growth continues to outpace the category, and we are on track to deliver our full-year targets. . . . Looking ahead to 2018, our organization is beginning to make progress in our performance transformation plan as indicated by these results. While we have much work to do, we firmly believe that we have the opportunity to unlock substantial profitability improvements over time, and will unlock the considerable potential of our branded portfolio to drive improved total shareholder return.

**The Sale Process**

35.     On August 23, 2017, Denise Morrison ("Morrison"), Campbell's President and

CEO, met with defendant Driscoll and the President of Snyder's-Lance's Pepperidge Farm brand to discuss Campbell's interest in exploring a possible acquisition of the Company.

36. On October 3, 2017, Campbell provided the Company a letter indicating its interest in acquiring Snyder's-Lance at a price ranging from $46.00 to $50.00 per share.

37. Between October 23 and October 27, 2017, Goldman Sachs contacted and had discussions with four companies referred to in the Proxy Statement as "Company A," "Company B," "Company C," and "Company D." The Proxy Statement fails to disclose whether the Company entered into any confidentiality agreements with Companies B, C, or D, including whether any of these parties are currently precluded from making a topping bid for the Company.

38. On November 3, 2017, Company A submitted an indication of interest to acquire the Company at a price range of $50.00 to $52.00 per share. Company A was unable to submit any subsequent bid due to an antitrust issue it later identified.

39. On December 13, 2017, the Company received an offer from Campbell to acquire Snyder's-Lance for $50.00 per share.

40. On December 16, 2017, defendant Driscoll informed the Board that he had received an inquiry from the CEO of a company referred to in the Proxy Statement as "Company E" regarding a potential business combination with the Company. After discussion, the special committee of the Board determined that defendant Driscoll should not respond to Company E's inquiries.

41. The next day, Goldman Sachs rendered its fairness opinion and the Board approved the Merger Agreement.

42. On December 18, 2017, Campbell and the Company executed the Merger Agreement.

9

**The Proposed Transaction**

43.     On December 18, 2017, Campbell and Snyder's-Lance issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> CAMDEN, N.J. & CHARLOTTE, N.C.--Campbell Soup Company (NYSE: CPB) and Snyder's-Lance (NASDAQ: LNCE) today announced that the companies have entered into an agreement for Campbell to acquire Snyder's-Lance for $50.00 per share in an all-cash transaction. The purchase price represents a premium of approximately 27 percent to Snyder's-Lance's closing stock price on Dec. 13, 2017, the last trading day prior to media reports regarding a potential transaction. The acquisition, which has been approved by the Boards of Directors of both companies, will enable Campbell to expand its portfolio of leading snacking brands.
>
> Snyder's-Lance is a leading snacking company that manufactures and markets snack food throughout the United States. The company's portfolio includes well-known brands such as Snyder's of Hanover, Lance, Kettle Brand, KETTLE chips, Cape Cod, Snack Factory Pretzel Crisps, Pop Secret, Emerald and Late July. Snyder's-Lance has leading market positions in its core categories including pretzels, sandwich crackers, kettle chips, deli snacks and organic and natural tortilla chips.
>
> **Acquisition and Snyder's-Lance Highlights:**
>
> - Combines the strengths of both organizations to drive sales growth and expand Campbell's footprint in the $89 billion U.S. snacking market, which had a three-year compound annual growth rate (CAGR) of nearly 3 percent
>
> - Snyder's-Lance reported $2.2 billion in net sales for the trailing 12 months ended Sept. 30, 2017
>
> - From calendar 2012-2016, Snyder's-Lance net sales grew at an 11.5 percent CAGR; organic net sales outpaced category growth with a 4 percent CAGR
>
> The acquisition of Snyder's-Lance will accelerate Campbell's access to faster-growing distribution channels including the convenience and natural channels.
>
> **Strengthening Campbell's Portfolio in Faster-Growing Categories**
>
> Denise Morrison, Campbell's President and Chief Executive Officer, said, "The acquisition of Snyder's-Lance will accelerate Campbell's strategy and is in line with our Purpose, 'real food that matters for life's moments.' It will provide our

10

consumers with an even greater variety of better-for-you snacks. The combination of Snyder's-Lance brands with Pepperidge Farm, Arnott's and Kelsen will create a diversified snacking leader, drive sales growth and create value for shareholders. This acquisition will dramatically transform Campbell, shifting our center of gravity and further diversifying our portfolio into the faster-growing snacking category. We look forward to welcoming Snyder's-Lance's employees and their trusted family of leading brands to our company."

Campbell's baked snacks product portfolio generated approximately $2.5 billion in net sales in fiscal 2017. With the addition of Snyder's-Lance's complementary portfolio, snacking would represent approximately 46 percent of Campbell's annual net sales (previously 31 percent) on a pro forma basis. Campbell's soup portfolio, including the recent acquisition of Pacific Foods, would represent approximately 27 percent of the company's annual net sales.

Brian J. Driscoll, President and Chief Executive Officer of Snyder's-Lance, said, "Following a thorough review process of strategic options, we believe this transaction maximizes value for our shareholders through an immediate and certain cash premium. The transaction also unlocks the value of our portfolio, reflecting the progress we have made planning and executing our transformation. We are excited to join Campbell and to continue to provide great products to our consumers with an uncompromising focus on ingredients, quality and taste."

**Creating a Snacking Leader**

Snyder's-Lance will become part of Campbell's Global Biscuits and Snacks division, which includes the company's Pepperidge Farm, Arnott's and Kelsen businesses, and the simple meals and shelf-stable beverages business in Australia, Asia Pacific and Latin America. The division is led by Luca Mignini, President. The division will combine Snyder's-Lance's portfolio with Campbell's iconic snacking brands including Goldfish crackers, Tim Tam biscuits, Milano cookies and Kjeldsens butter cookies.

Mignini said, "Campbell's expertise in brand-building, R&D, and supply chain and operations, coupled with Snyder's-Lance's well-known portfolio, distribution system and history of strong sales growth, will allow us to create a differentiated, branded snacking business with greater scale. The combined portfolio will be even more relevant to consumers who are increasingly seeking better-for-you snacks."

Headquartered in Charlotte, N.C., Snyder's-Lance has approximately 6,000 employees and operates 13 manufacturing centers throughout the United States and United Kingdom.

**Approvals and Financing**

11

Campbell plans to finance the acquisition through $6.2 billion of debt comprising a combination of long-term and short-term debt. Pro forma leverage is expected to be 4.8x at closing, and the company is committed to deleveraging to approximately 3x by fiscal 2022. Campbell will suspend share repurchases to maximize free cash flow for the purposes of paying down debt. Campbell also expects to maintain its current dividend policy.

The closing of the transaction is subject to the approval of Snyder's-Lance shareholders, as well as customary regulatory approvals and other closing conditions. Certain members of the Warehime family, who collectively own 13.2 percent of Snyder's-Lance's outstanding common stock, have agreed to vote their shares in support of the transaction. Closing is expected by early second quarter of calendar 2018. Campbell expects the acquisition to be accretive to adjusted EPS in fiscal 2019, excluding integration costs and costs to achieve synergies.

Credit Suisse acted as lead financial adviser to Campbell in this transaction. Rothschild also acted as a financial adviser to Campbell. Weil, Gotshal & Manges LLP acted as Campbell's legal counsel. Goldman Sachs & Co. LLC acted as lead financial adviser to Snyder's-Lance. Deutsche Bank has also acted as long-time financial adviser to Snyder's-Lance. Jenner & Block LLP acted as legal counsel to Snyder's-Lance.

**Reshaping Campbell's Portfolio**

This is Campbell's sixth acquisition in five years. The company acquired Bolthouse Farms in August 2012, organic baby food company Plum in June 2013, biscuit company Kelsen in August 2013, fresh salsa and hummus maker Garden Fresh Gourmet in June 2015, and organic broth and soup producer Pacific Foods in December 2017.

## Insiders' Interests in the Proposed Transaction

44.     Snyder's-Lance insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and Snyder's-Lance's public stockholders.

45.     Notably, it appears certain executive officers and directors may have secured positions for themselves upon completion of the Proposed Transaction. In the November 27, 2017 joint press release announcing the Proposed Transaction, Campbell's President and CEO Morrison stated, "[w]e look forward to welcoming Snyder's-Lance's employees and their trusted

12

family of leading brands to our company."

46. Snyder's-Lance insiders stand to reap substantial financial benefits for securing the deal with Campbell. Each outstanding and vested Company option, performance-vesting Company restricted stock award granted under the Company's 2017 Enterprise Incentive Plan, and each vested restricted stock unit will be converted into cash payments.

47. Further, if they are terminated in connection with the Proposed Transaction, Snyder's-Lance's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name of Named Executive Officer | Cash (1) ($) | Equity (2) ($) | Perquisites/ benefits (3) ($) | Other ($) | Total ($) |
|---|---|---|---|---|---|
| Brian J. Driscoll | $ 2,700,000 | $ 17,722,446 | $ 7,025 | — | $ 20,429,471 |
| Alexander W. Pease | $ 1,955,608 | $ 2,756,853 | $ 77,396 | — | $ 4,789,857 |
| Andrea L. Frohning | $ 836,973 | $ 1,235,490 | $ 57,376 | — | $ 2,129,839 |
| John T. Maples | $ 1,084,386 | $ 1,359,297 | $ 63,896 | — | $ 2,507,579 |
| Gail Sharps Myers | $ 1,028,917 | $ 1,257,981 | $ 62,996 | — | $ 2,349,894 |
| Carl Lee, Jr. (4) | $ 1,157,123 | $ 6,181,736 | — | — | $ 7,338,859 |

## The Proxy Statement Contains Material Misstatements and Omissions

48. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Snyder's-Lance's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.

49. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Snyder's-Lance's financial projections, relied upon by Snyder's-Lance's financial advisor Goldman Sachs; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Goldman Sachs; (iii) the background process leading to

13

the Proposed Transaction; and (iv) Company insiders' potential conflicts of interest. Accordingly, Snyder's-Lance stockholders are being asked to make a voting decision in connection with the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning Snyder's-Lance's Financial Projections***

50.　　The Proxy Statement is materially deficient because it fails to disclose material information relating to the Company's intrinsic value and prospects going forward.

51.　　First, the Proxy Statement omits material information regarding Snyder's-Lance management's financial projections (the "Company Forecasts") and the financial analyses performed by the Company's financial advisor Goldman Sachs.

52.　　For example, the Proxy Statement states:

> Using the Company Forecasts, Goldman Sachs performed an illustrative discounted cash flow analysis on the Company to derive a range of illustrative present values per share of Company common stock as of September 30, 2017. . . . Goldman Sachs derived a range of illustrative enterprise values for the Company as of September 30, 2017, by discounting to present value as of September 30, 2017 (a) the estimates of the unlevered free cash flow to be generated by the Company for the period from October 1, 2017 to December 31, 2020, as reflected in the Company Forecasts, and (b) a range of illustrative terminal values for the Company as of December 31, 2020, calculated by applying perpetuity growth rates ranging from 1.75% to 2.25% to the estimate of the terminal year unlevered free cash flow of the Company as reflected in the Company Forecasts (which analysis implied a range of multiples of enterprise value/terminal year EBITDA of 10.2x to 14.3x).

Proxy Statement at 48. The Proxy Statement fails, however, to disclose the Company's unlevered free cash flows for the period from October 1, 2017 to December 31, 2020 and further fails to disclose the line items utilized to calculate the Company's unlevered free cash flows, including: (i) depreciation and amortization; (ii) changes in net working capital; and (iii) capital expenditures. Additionally, the Proxy Statement fails to disclose the Company's net operating losses over the projections period, that were taken into account in Goldman Sachs's *Illustrative*

*Discounted Cash Flow Analyses* ("DCF").

53. Similarly, the Proxy Statement states that in performing its *Illustrative Present Value of Future Share Price Analysis* "Goldman Sachs discounted to present value as of December 13, 2017, the range of theoretical future values per share of Company common stock it derived as of December 31, 2019, together with the estimated cumulative dividends per share estimated to be paid from December 13, 2017 through that date as reflected in the Company Forecasts." Proxy Statement at 47. The Proxy Statement fails, however, to disclose the Company's dividends per share estimated to be paid from December 13, 2017 through December 31, 2019 as reflected in the Company Forecasts.

54. The omission of this information renders the statements in the "Unaudited Prospective Financial Information" and "Opinion of Goldman Sachs & Co. LLC" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

**Material Omissions Concerning Goldman Sachs's Financial Analyses**

55. The Proxy Statement describes Goldman Sachs's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Goldman Sachs's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Snyder's-Lance's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman Sachs's fairness opinion in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Snyder's-Lance's stockholders.

56. As set forth above, with respect to Goldman Sachs's *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose the Company's dividends per

share estimated to be paid from December 13, 2017 through December 31, 2019 as reflected in the Company Forecasts, as well as the Company's estimated net debt as of December 31, 2019.

57.     With respect to Goldman Sachs's DCF, the Proxy Statement fails to disclose (i) the Company's unlevered free cash flows for the period from October 1, 2017 to December 31, 2020; (ii) the inputs and assumptions underlying the discount rate range of 6.0% to 7.0% used in the analysis; and (iii) the Company's net operating losses over the projections period, that were taken into account in performing the DCF.

58.     With respect to Goldman Sachs's *Historical Trading Multiples* analysis, the Proxy Statement fails to disclose the NTM EBITDA and NTM EPS multiples for each target company analyzed by Goldman Sachs as well as any benchmarking analysis Goldman Sachs performed to compare Snyder's-Lance with the selected companies.

59.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

60.     The omission of this information renders the statements in the "Opinion of Goldman Sachs & Co. LLC" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background Process of the Proposed Transaction***

61.     The Proxy Statement omits material information relating to the sale process leading up to the Proposed Transaction.

62.     The Proxy Statement fails to disclose whether the Company entered into any confidentiality agreements with any of the other parties besides Company A and Campbell's involved in the sale process, and if so, the terms of the confidentiality agreements.

16

63.     The disclosure of the existence and terms of any confidentiality agreements Snyder's-Lance entered into with any other party is crucial to Snyder's-Lance stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company. This information takes on heightened importance considering that the Company is restricted from releasing any person from, or modifying or waiving any provision of, any confidentiality, standstill or similar agreement by the terms of the Merger Agreement.

64.     The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

65.     Further, the Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Snyder's-Lance insiders.

66.     In Snyder's-Lance and Campbell's November 27, 2017 joint press release announcing the Proposed Transaction, Denise Morrison, Campbell's President and CEO, stated, "We look forward to welcoming Snyder's-Lance's employees and their trusted family of leading brands to our company." The Proxy Statement, however, fails to disclose whether any Snyder's-Lance officers or directors will continue with the combined company after completion of the Proposed Transaction. The Proxy Statement further fails to disclose the details of any employment related discussions and negotiations that occurred between Campbell and Snyder's-Lance executive officers, including who participated in all such communications, when they occurred, and their content, as well as whether any of Campbell's prior proposals or indications of interest mentioned management retention.

67.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

68.     The omission of this information renders the statements in the "Background of the Merger" and "Interests of Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

69.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder**

70.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

71.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

18

72.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the sales process for the Company, the financial analyses performed by the Company's financial advisor, and the actual intrinsic standalone value of the Company. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

73.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.

74.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

75.     Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Class Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

76.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

77.     The Individual Defendants acted as controlling persons of Snyder's-Lance within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Snyder's-Lance and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the

Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

78. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

79. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

80. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

81. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

82. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein.

20

By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Snyder's-Lance's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Snyder's-Lance, and against defendants, as follows:

A.      Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Snyder's-Lance stockholders;

C.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: January 31, 2018

Respectfully submitted,

/s/ Nancy R. Meyers
Nancy R. Meyers
NC State Bar 23339
WARD BLACK LAW
208 West Wendover Avenue
Greensboro, North Carolina 27401
Tel: (336) 333-2244
Fax: (336) 379-9415
nmeyers@wardblacklaw.com

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

*Attorneys for Plaintiff*